## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 16-207** |
| **MIGUEL GAMEZ** | **SECTION: "G"** |

## ORDER AND REASONS

Before the Court is Defendant Miguel Gamez's ("Gamez") motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] In the motion, Gamez contends that his medical conditions—combined with the elevated risk of contracting COVID-19 while in custody—constitute sufficient grounds for a sentence reduction under Section 3582(c)(1)(A).[2] The government opposes the motion for compassionate release.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion. To ensure public safety and adequately address Gamez's medical issues, the Court orders additional terms of supervised release as set forth below.

## I. Background

On December 1, 2016, Gamez was charged by an Indictment with conspiracy to distribute and to possess with the intent to distribute 5 kilograms or more of cocaine hydrochloride ("Count 1") and obstruction of justice ("Count 2").[4] On June 21, 2017, Gamez pleaded guilty as charged

---

[1] Rec. Doc. 88.

[2] *Id.*

[3] Rec. Doc. 91.

[4] Rec. Doc. 1.

1

in Counts 1 and 2 of the Indictment.[5]

On November 8, 2018, the Court sentenced Gamez to a term of 70 months imprisonment as to Counts 1 and 2, to be served concurrently.[6] The Court also sentenced Gamez to a term of 3 years of supervised release.[7] BOP records reflect that Gamez is currently incarcerated at Federal Correctional Institution Coleman Law.[8] His projected release date is December 9, 2021.[9]

On December 18, 2020, Gamez filed the instant *pro se* motion for compassionate release pursuant to Section 3582(c)(1)(A).[10] On December 22, 2020, the Court appointed the Office of the Federal Public Defender for the Eastern District of Louisiana to represent Gamez.[11] On December 29, 2020, the government filed an opposition to the motion for compassionate release.[12] On February 17, 2021, Gamez, through counsel, filed a supplemental memorandum in further support of the motion for compassionate release.[13]

## II. Parties' Arguments

### A.    *Gamez's Arguments in Support of the Motion*

Gamez argues that his psoriatic arthritis, psoriasis, obesity, smoking history, and immune

---

[5] Rec. Doc. 45. The case was originally allotted to the Honorable Kurt D. Engelhardt. On May 18, 2018, the case was reallotted to the Honorable Nannette Jolivette Brown after the elevation of Judge Engelhardt to the United States Court of Appeals for the Fifth Circuit. Rec. Doc. 69.

[6] Rec. Doc. 85.

[7] *Id*. at 3.

[8] https://www.bop.gov/inmateloc/.

[9] *Id*.

[10] Rec. Doc. 88.

[11] Rec. Doc. 89.

[12] Rec. Doc. 91.

[13] Rec. Doc. 99.

system deficiency—combined with the risks of contracting COVID-19 while incarcerated— constitute sufficient grounds for a sentence reduction.[14] Gamez asserts that he exhausted his administrative remedies by filing a request for compassionate release with the warden of his facility over 30 days ago.[15] Gamez contends that his circumstances are extraordinary and compelling to warrant compassionate release under Section 3582(c)(1)(A).[16] He argues that a sentence of time served would accomplish the goals of sentencing set forth at 18 U.S.C. § 3553(a)(2).[17]

**B.** ***The Government's Arguments in Opposition to the Motion***

The government makes two principal arguments in opposition to the instant motion.[18] First, the government contends that Gamez has failed to present any "extraordinary and compelling reasons" warranting a reduction under Section 3582(c)(1)(A).[19] The government contends that Gamez has not submitted any medical documentation to show that he suffers from a medical condition that constitutes a CDC risk factor for COVID-19.[20] To the extent that Gamez asserts he suffers from rheumatoid arthritis or psoriatic arthritis, the government notes that Gamez has not presented any credible medical evidence to support such a diagnosis.[21] The government argues that the fact Gamez is prescribed adalimumab (also known as humira) may suggest, at

---

[14] Rec. Doc. 88 at 1.

[15] *Id.* at 2.

[16] *Id.* at 3.

[17] *Id.* at 4–5.

[18] Rec. Doc. 91.

[19] *Id.* at 10.

[20] *Id.* at 14.

[21] *Id.*

best, that he has a condition that falls within the CDC's list of factors that "might" increase the risk of severe illness.[22] Given the lack of data and certainty as to the "might" category of CDC factors, the government asserts that Gamez has not alleged that he has a medical condition constituting an "extraordinary and compelling reason" for compassionate release.[23]

Second, the government argues that the Section 3553(a) factors disfavor a sentence reduction.[24] The government asserts that Gamez's offense was serious, and the government notes that Gamez attempted to destroy evidence while in custody.[25] Moreover, prior to this conviction, the government notes that Gamez was convicted of a domestic-violence related assault where he punched his then-girlfriend and brandished a firearm.[26] Finally, the government contends that this Court does not have authority to direct the BOP to place Gamez on home confinement.[27]

## C.   *Gamez's Arguments in Further Support of the Motion*

Gamez makes two arguments in the supplemental brief filed through counsel.[28] First, Gamez argues that he suffers from several health conditions that increase his risk of death or serious illness if infected with COVID-19.[29] Gamez notes that he is obese, is a former smoker, and suffers from an arthritic joint condition.[30] Gamez contends that he takes humira, an

---

[22] *Id*. at 16.

[23] *Id*.

[24] *Id.* at 18.

[25] *Id.*

[26] *Id.*

[27] *Id*. at 20.

[28] *See generally* Rec. Doc. 99.

[29] *Id*. at 2.

[30] *Id*. at 3.

immunosuppressant, for his arthritic joint condition.[31] Both individually and in combination, Gamez asserts that his medical history puts him at increased risk for COVID-19 complications.[32] For these reasons, Gamez contends that there are extraordinary and compelling reasons for his release.[33]

Second, Gamez argues that he is not a danger to the community and the Section 3553(a) factors support his release.[34] Gamez notes that the domestic violence conviction cited by the government is from over 16 years ago.[35] Gamez notes that he has not remained in contact with the victim, he plans to have no relationship with her when released, and he will not live in the same city as the victim.[36] Gamez asserts that his prison record has been exemplary, with only one disciplinary infraction for taking a pie from the kitchen without permission.[37] Therefore, Gamez contends that his record supports a finding that he is not a danger to society.[38] Gamez states that he will reside with his brother and elderly relatives in Pensacola, Florida, when he is released.[39] He also notes that he is scheduled to enter a halfway house in July 2021.[40]

---

[31] *Id.* at 3–4.

[32] *Id.* at 4.

[33] *Id.* at 9–10.

[34] *Id.* at 11.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* at 1.

[40] *Id.*

### III. Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed."[41]

Federal law provides three exceptions:

(1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A);[42]

(2) "to the extent expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure"[43]; or

(3) when the defendant was sentenced based on a retroactively lowered sentencing range.[44]

Gamez moves the Court to reduce his sentence under Section 3582(c)(1)(A).[45] Motions to reduce a sentence under Section 3582(c)(1)(A) are often referred to as "compassionate release" motions.[46] Prior to 2018, only the Director of the BOP could file a compassionate release motion under Section 3582(c)(1)(A).[47] In 2018, Congress passed, and the President signed into law, the First Step Act.[48] That Act amended the process to file compassionate release motions by permitting prisoners to file such motions directly with a court.[49]

Yet, before filing a compassionate release motion directly with a court, a prisoner must

---

[41] 18 U.S.C. § 3582(c)(1)(A).

[42] *Id.*

[43] *Id.* § 3582(c)(1)(B).

[44] *Id.* § 3582(c)(2).

[45] Rec. Docs. 88, 99.

[46] *See, e.g., United States v. Reeves*, No. CR 18-00294, 2020 WL 1816496, at *1 (W.D. La. Apr. 9, 2020).

[47] *Id.*

[48] *See id.*

[49] *See id.*

exhaust the administrative requirements under Section 3582(c)(1)(A).[50] Indeed, under 3582(c)(1)(A), a defendant may personally move the Court to reduce his or her sentence after either (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of [a request to the Bureau of Prisons to bring a motion on the defendant's behalf] by the warden of the defendant's facility," whichever is earlier.

Once Section 3582(c)(1)(A)'s exhaustion requirement is satisfied, a court may reduce a prisoner's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."[51] Finally, the Court must "also consider[ ] the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable."[52]

## IV. Analysis

In the instant motion, Gamez argues that his medical conditions—combined with his elevated risk of contracting COVID-19 while incarcerated—constitute sufficient grounds for a sentence reduction under Section 3582(c)(1)(A).[53] In response, the government argues that the motion for compassionate release should be denied on the merits.[54] The Court addresses each of these issues in turn.

---

[50] *See* 18 U.S.C. § 3582(c)(1)(A).

[51] *Id.*

[52] *Id.*

[53] Rec. Docs. 88, 99.

[54] Rec. Doc. 91.

### A.      Whether Gamez has Exhausted Administrative Remedies

A defendant must exhaust administrative remedies before filing a motion in the district court seeking compassionate release pursuant to Section 3582(c)(1)(A).[55] If a defendant submits a request for compassionate release to the warden of his facility, and thereafter there is a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,"[56] the exhaustion requirement is satisfied, and the Court may consider a motion for compassionate release filed by the defendant. The Fifth Circuit has held that the exhaustion requirement is not jurisdictional, but it is a mandatory claim-processing rule.[57] Because the administrative exhaustion requirement is a claim-processing rule, it must be enforced unless it is waived by the government.[58]

In this case, Gamez filed a request for compassionate release with the warden, which was denied on June 11, 2020.[59] The government does not dispute that the exhaustion requirements of Section 3582(c)(1)(A) are satisfied.[60] Therefore, the Court may evaluate Gamez's request for compassionate release on the merits.[61]

---

[55] *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020) ("The statute's requirement that a defendant file a request with the BOP before filing a motion in federal court is a [mandatory] nonjurisdictional claim-processing rule."); 28 U.S.C. § 3582(c)(1)(A).

[56] *Franco*, 973 F.3d at 468.

[57] *Id*.

[58] *See United States v. Rivas*, No. 20-10360, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule since the Government did not waive the exhaustion issue on appeal.").

[59] Rec. Doc. 88-1.

[60] Rec. Doc. 91 at n.15.

[61] *See Franco*, 973 F.3d at 468 (recognizing that a district court must enforce the mandatory claim-processing rule where it is raised by the government). Here, the government does not raise the claim-processing rule.

**B.**      ***Whether Extraordinary and Compelling Reasons Warrant a Sentence Reduction***

Pursuant to 28 U.S.C. § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the United States Sentencing Guidelines is the applicable policy statement. Application Note 1 to Section 1B1.13 defines the term "extraordinary and compelling reasons" to include the following situations: (1) the defendant is suffering from a terminal illness ("Subsection A1"); (2) the defendant is suffering from a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" ("Subsection A2"); (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less ("Subsection B"); (4) the death or incapacitation of the caregiver of the defendant's minor child or minor children ("Subsection C1"); (5) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner ("Subsection C2"); or (6) "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described" in the proceeding subsections ("Subsection D").[62]

In the instant case, Gamez is not suffering from a terminal illness and he is not yet 65 years old. Additionally, Gamez does not argue that any family circumstances might warrant a reduction of his sentence under Subsection C. Accordingly, Subsections A, B, and C of the

---

[62] U.S.S.G. § 1B1.13 cmt. n.1  (2018).

Application Note do not apply. Instead, Gamez argues that his case falls within Subsection D.

Subsection D requires a finding of extraordinary and compelling reasons to justify a reduction of sentence. The Sentencing Guidelines were last amended on November 1, 2018, and therefore the policy statement has not been updated since the enactment of the First Step Act on December 21, 2018.[63] Before the enactment of the First Step Act, only the Bureau of Prisons could move for compassionate release under Section 3582. The First Step Act amended Section 3582(c) to allow a defendant to bring a motion for compassionate release "if he has exhausted his administrative rights to appeal the BOP's failure to bring such a motion or has waited 30 days after the warden's receipt of the request, whichever is earlier."[64]

In light of the First Step Act, there has been disagreement over whether courts may determine what constitutes an extraordinary and compelling reason under the catchall provision in Subsection D.[65] Recent Fifth Circuit caselaw instructs that reference to the Guidelines is one step in the district court's own determination of whether extraordinary and compelling reasons warrant a reduction of sentence.[66] The Guidelines are not "the dispositive boundary of what may be judicially determined to be extraordinary and compelling reasons for a sentence reduction for medical reasons."[67] Accordingly, "the decision of whether to ultimately grant a modification is left to the sound discretion of the trial court," and such decisions are reviewed on appeal for abuse

---

[63] *See United States v. Gomez*, 960 F.3d 173, 176 (5th Cir. 2020).

[64] *United States v. Bell*, No. 20-10427, 2020 WL 5823316, at *1 (5th Cir. Sept. 30, 2020).

[65] *United States v. Lawrence*, No. CR 13-42, 2020 WL 5411778, at *3–4 (E.D. La. Sept. 9, 2020) (collecting cases).

[66] *United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. 2020).

[67] *Id*.

of discretion.[68]

In the motion, Gamez contends that his medical conditions—combined with the elevated risk of contracting COVID-19 while in custody—constitute sufficient grounds for a sentence reduction under Section 3582(c)(1)(A).[69] Specifically, Gamez asserts that he is obese, is a former smoker, and takes an immunosuppressant for his arthritic joint condition.;[70] The government contends that Gamez has not submitted any medical documentation to show that he suffers from a medical condition that constitutes a CDC risk factor for COVID-19.[71]

The BOP medical records submitted in support of this motion show that Gamez is obese. Gamez is 6 feet tall and weighs 265 pounds,[72] with a resulting Body Mass Index ("BMI") of 35.9, placing him in the obese category. The CDC has stated that people with obesity are at an increased risk of severe illness from COVID-19.[73] Indeed, the government recognizes that a person with a BMI of 30 or higher is at an increased risk of severe illness from COVID-19.[74]

Additionally, Gamez is a former smoker. The CDC has recognized that being a current or former cigarette smoker increases an individual's risk of severe illness from COVID-19.[75]

---

[68] *Id.* (quoting *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011)).

[69] Rec. Docs. 88, 99.

[70] *See id.*

[71] Rec. Doc. 91 at 14.

[72] Rec. Doc. 100-2 at 24, 125.

[73] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 21, 2021).

[74] Rec. Doc. 91 at 13.

[75] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 21, 2021).

Gamez also takes adalimumab (also known as humira) for his arthritic joint condition.[76] Humira "is a TNF blocker medicine that can lower the ability of [an individual's] immune system to fight infections.[77] The CDC has recognized that individuals who use immune weakening medicines might be at an increased risk of severe illness from COVID-19.[78]

Considering that Gamez is obese, is a former smoker, and takes an immunosuppressant for his arthritic joint condition, the Court finds that Gamez's medical conditions make him particularly vulnerable to severe illness from COVID-19 so as to warrant a finding of "extraordinary and compelling" circumstances.

**C.**   ***Whether the Section 3553(a) Factors Weigh in Favor of Reducing Gamez's Sentence***

Having found that "extraordinary and compelling" circumstances warrant a reduction in sentence, the Sentencing Guidelines' policy statement regarding compassionate release states that a defendant's sentence may be reduced only if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and the Court's determination is in line with "the factors set forth in 18 U.S.C. § 3553(a)."[79]

Gamez argues that his release is supported by the Section 3553(a) factors, and he does not pose a danger to any person or to society if released.[80] The government argues that the Section

---

[76] Rec. Doc. 100-2 at 25.

[77] Important Safety Information About Humira (Adalimumab), https://www.humira.com/global/frequently-asked-questions (last visited Feb. 21, 2021).

[78] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 21, 2021).

[79] U.S.S.G. § 1B1.13 cmt. n.1  (2018).

[80] Rec. Docs. 88, 99.

3553(a) factors disfavor a sentence reduction.[81]

Section 3142(g) sets out the factors courts must consider in deciding whether to release a defendant pending trial. The factors related to whether a petitioner is a danger to the community include: "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[82] Section 3553(a), which sets forth the factors to consider in initially imposing a sentence, requires the Court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.][83]

On November 8, 2018, Gamez appeared before this Court after pleading guilty to a conspiracy to distribute cocaine hydrochloride and obstruction of justice, and the Court sentenced Gamez to a term of 70 months imprisonment.[84] The Court also sentenced Gamez to a term of 3

---

[81] Rec. Doc. 91 at 18.

[82] 18 U.S.C. § 3142(g).

[83] 18 U.S.C. § 3553(a).

[84] Rec. Doc. 85.

years of supervised release.[85] In the underlying offense, Gamez and a co-conspirator transported drugs from Texas to Florida.[86] After his arrest, Gamez attempted to break his cellular telephone in an effort to prevent law enforcement from retrieving information regarding his involvement in the drug trafficking organization.[87] BOP records reflect that Gamez is currently incarcerated at Federal Correctional Institution Coleman Law.[88] His projected release date is December 9, 2021.[89] Gamez is scheduled to enter a halfway house in July 2021.[90]

Gamez is a 34-year-old, Hispanic male.[91] He was born in North Carolina, but he has been a resident of Florida since his adolescent years.[92] Gamez was primarily raised by his mother under difficult financial conditions.[93] Gamez's mother passed away in 2005.[94] He has been working since age 12,[95] and he was consistently employed in the construction industry from 2005 until his arrest.[96] He has two children.[97] Gamez suffers from severe rheumatoid arthritis and psoriasis.[98]

---

[85] *Id.* at 3.

[86] Rec. Doc. 50 at ¶ 10.

[87] *Id.* at ¶ 16.

[88] https://www.bop.gov/inmateloc/.

[89] *Id.*

[90] Rec. Doc. 99 at 1, n.1.

[91] Rec. Doc. 50 at p. 4.

[92] *Id.* at ¶¶ 49, 53.

[93] *Id.* at ¶ 51.

[94] *Id.*

[95] *Id.* at ¶ 79.

[96] *Id.* at ¶ 65–68.

[97] *Id.* at ¶ 52.

[98] *Id.* at ¶ 56.

At sentencing, Gamez reported that his medication cost approximately $800 per month with medical insurance and was a motivating factor for his commission of the instant offense.[99] Gamez reported a prior history of drug abuse involving marijuana and cocaine.[100]

Gamez was previously convicted of aggravated assault with a firearm and carrying a concealed firearm in 2005 when he was 19 years old.[101] The convictions resulted after he punched his then-girlfriend and brandished a firearm.[102] Gamez also has prior convictions for driving without a license and driving a vehicle with an invalid license plate.[103]

Gamez plans to live with his brother in Pensacola, Florida, when he is released from prison. Gamez is incarcerated at a low security facility. He has an exemplary prison record.

Taking all of these factors into consideration, the Court finds that with appropriate support Gamez is not a danger to the safety of any other person or to the community, and a sentence reduction is warranted under Section 3553(a). The instant offense was not violent in nature, and it appears to have been motivated by the financial strain associated with Gamez's medical conditions. Accordingly, having considered all of the relevant factors under Section 3142(g) and Section 3553(a), and having weighed the totality of the relevant circumstances, the Court finds the factors weigh in favor of Gamez's request for compassionate release. The Court orders additional terms of supervised release as set forth below to ensure public safety and adequately address Gamez's medical issues.

---

[99] Rec. Doc. 81 at 4.

[100] Rec. Doc. 50 at ¶¶ 59–60.

[101] *Id*. at ¶ 40.

[102] *Id*.

[103] *Id*. at ¶¶ 41–42.

### V. Conclusion

For the reasons discussed above and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court finds that extraordinary and compelling reasons warrant a reduction of Gamez's sentence. Gamez does not pose a danger to any other person or the community, the Section 3553(a) factors support a reduction, and the reduction is consistent with applicable U.S. Sentencing Commission policy statements. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Miguel Gamez's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **GRANTED.**[104] Gamez's sentence is reduced to time served in prison.

**IT IS FURTHER ORDERED** that upon release from imprisonment, Gamez shall be placed on supervised release for a term of three years as to Counts 1 and 2, to be served concurrently. While on supervised release, Gamez shall abide by all standard and special conditions of supervised release, which were previously imposed at sentencing:[105]

1. To ensure that Gamez is able to support himself through lawful means, he shall pursue his HiSET or vocational training that will equip him for suitable employment as approved by the United States Probation Officer.

2. To ensure that Gamez supports himself through lawful means, Gamezr shall maintain full-time, legitimate employment and not be unemployed for a term of more than 30 days unless excused for school, training, or other acceptable reasons. Further, Gamez shall provide documentation including but not limited to pay stubs, contractual agreements, W-2 Wage and Earning Statements, and other documentation requested by the United States Probation Officer. If unemployed, Gamez shall participate in employment readiness programs, as approved by the Probation Officer.

3. Considering the nature of the instant offense and Gamez's responses to the Texas Christian University Drug Screen II ("TCUDS"), Gamez shall participate in an approved cognitive behavioral therapeutic treatment program and abide by all

---

[104] Rec. Doc. 88.

[105] *See* Rec. Doc. 85.

supplemental conditions of treatment. Gamez shall contribute to the cost of this program to the extent that he is deemed capable by the United States Probation Officer.

4.  Considering the nature of the instant offense, Gamez shall submit his person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time in a reasonable manner, based upon reasonable suspicion that contraband or evidence of a violation of a condition of supervision may exist; failure to submit to a search may be grounds for revocation; Gamez shall warn any other resident(s) that the premises may be subject to searches pursuant to this condition.

Additionally, in light of the COVID-19 pandemic and the reduction of sentence granted to Gamez by this Order, the following additional special conditions shall also be imposed:

1.  Upon release, Gamez shall report immediately to the home of his brother in Pensacola, Florida.

2.  In light of the COVID-19 pandemic, once released Gamez shall self-quarantine for a period of 14 days.

3.  To assist Gamez with his re-entry into the community, Gamez shall provide monthly updates to the Court.

If Gamez violates any condition of supervised release, his term of supervised release could be revoked and he could be sentenced to serve in prison all or part of the term of supervised release without credit for any time previously served on supervised release.[106]

**NEW ORLEANS, LOUISIANA,** this __1st__ day of March, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[106] *See* 18 U.S.C. § 3583(e)(3).